NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF THE VIRGIN ISLANDS
## ST. CROIX DIVISION

DR. PAUL ABNEY,

    Plaintiff,

v.

UNIVERSITY OF THE VIRGIN ISLANDS,

    Defendant.

Civ. No. 08-116

**OPINION**

THOMPSON, U.S.D.J.[1]

This matter appears before the Court upon the motion for summary judgment brought by Defendant University of the Virgin Islands ("Defendant" or "University"). (ECF No. 87). Plaintiff Dr. Paul Abney ("Plaintiff") opposes. (ECF No. 112). The Court has issued the opinion below based on the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Defendant's motion will be granted in part and denied in part.

## BACKGROUND

This case involves claims of employment discrimination on the basis of race by Plaintiff Dr. Paul Abney, who is white, against Defendant University of the Virgin Islands. Plaintiff taught at the University from August 2004 to May 2009 as an Assistant Professor of Education. (Contract for Academic Year 2004-2005, ECF No. 105-4; Contract for Academic Year 2005-2006, ECF No. 105-6; Record of Appointment Letter for Academic Year 2006-2007, ECF No.

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

1

105-8; Contract for Academic Year 2007-2008, ECF No. 105-10; Contract for Academic Year 2008-2009, ECF No. 105-20). While in this position, Plaintiff earned an annual salary ranging from $43,716 to $53,062, depending on the year. (*Id.*). In the 2005-2006 academic year, Plaintiff also served as Chair of the Division of Education, and so he earned a salary of $69,966 for that year. (Amendment to Contract for Academic Year 2005-2006, ECF No. 105-7).

In July 2006, Defendant hired Dr. Cynthia Jackson, who is black, to serve as the next Chair of the Division of Education. (Jackson June 28, 2010 Dep. 57-58, ECF No. 87-4). Dr. Jackson was charged with improving instructional quality and obtaining national accreditation. (Def.'s Statement of Undisputed Material Facts ¶ 58, ECF No. 86). Plaintiff alleges that Dr. Jackson was also charged with achieving a higher ratio of black to white teachers at the University. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 28, ECF No. 113).

As a result of this purported agenda, Dr. Jackson allegedly began speaking to Plaintiff and other white employees in a degrading manner and sending them degrading emails. (Aff. of Dr. Kelly Ross Kantz ¶ 8, ECF No. 106-4). Allegedly, Dr. Jackson made comments that her interest was in "giving back to her own," which the white faculty members understood meant the black faculty members. (*Id.* ¶ 11). Dr. Jackson ordered Plaintiff to change the course listings in a purportedly improper way and reassigned some of his responsibilities. (Affidavit of Dr. Paul Abney ¶¶ 8, 11, ECF No. 105-16). Dr. Jackson also cancelled an independent study course that Plaintiff had been scheduled to teach. (August 29, 2006 Email from Dr. Jackson to Dr. Paul Abney, ECF No. 106-15).

In response to Dr. Jackson's actions, Plaintiff and other faculty members initiated internal grievance processes with the University and participated in a faculty vote of no confidence. (Def.'s Statement of Undisputed Material Facts ¶ 30, ECF No. 86; Affidavit of Dr. Paul Abney

¶ 16, ECF No. 105-16; March 29, 2007 Letter from Faculty Members to Provost A. H. Musah, ECF No. 87-2). In a March 2007 letter, faculty members asserted that Dr. Jackson was unreasonably interfering with their ability to perform their professional duties effectively and unnecessarily disrupting their well-being. (March 29, 2007 Letter from Faculty Members to Provost A. H. Musah, ECF No. 87-2). Defendant investigated these allegations, and the investigator recommended that the University take the faculty's complaint seriously. (May 3, 2007 Memorandum from Dr. Utha O. Williams to Provost A. H. Musah, ECF No. 106-10). However, Defendant made no significant changes.

On October 8, 2007, Plaintiff and three of his colleagues filed another grievance against Dr. Jackson. (October 8, 2007 Letter from Dr. Paul Abney et al. to President Laverne Ragster, ECF No. 106-35). The faculty members asserted that Dr. Jackson had retaliated against them in their 2006-2007 faculty evaluations for having signed the vote of no confidence. (*Id.*). Defendant appointed an investigator to look into these allegations, and the investigator found that the evaluations had been retaliatory. (Nov. 5, 2007 Memorandum from Dr. Utha O. Williams to Provost A. H. Musah, ECF No. 105-36). However, she recommended only that the grievants be allowed to add a rebuttal to their performance evaluations to their files, not that the evaluations be removed, as the faculty members had requested. (*Id.*).

On appeal, the University's Administrative Review Panel agreed that Dr. Jackson had retaliated against the faculty members. (Dec. 20, 2007 Memorandum from the Chair of the Administrative Review Panel to Provost A. I. Musah, ECF No. 106-31; Jan. 4, 2008 Letter from Provost A. I. Musah to Dr. Paul Abney, ECF No. 105-38). Consequently, the Special Contracts Committee met to reconsider Plaintiff's performance for the 2006-2007 school year, and upwardly revised his evaluation. (Dec. 11, 2007 Letter from Provost A. H. Musah to Dr. Paul

Abney, ECF No. 105-37). The revised evaluation was added to Plaintiff's personnel file, but the initial evaluation was not removed. (February 7, 2008 Letter from Provost A. I. Musah to Dr. Paul Abney, ECF No. 106-34). Dr. Jackson was placed on administrative leave and reassigned to another position effective January 8, 2008. (January 4, 2008 Memorandum from Provost A. I. Musah to Dr. Cynthia Jackson, ECF No. 87-1). Her contract with the University expired on July 20, 2008, and it was not renewed. (January 18, 2008 Letter from Provost A. H. Musah to Dr. Cynthia Jackson, ECF No. 106-33).

Although the parties dispute whether this date is accurate, Plaintiff alleges that he filed a charge of discrimination with the EEOC on March 18, 2008. (Pl.'s Sept. 16, 2010 Dep. 124, ECF No. 105-2; Charge of Discrimination, ECF No. 87-1). Plaintiff also filed a discrimination complaint with the Virgin Islands' Civil Rights Commission in April 2008. (Letter from Civil Rights Commission Executive Director Lunsford A. Williams to President Laverne Ragster, ECF No. 105-18). Defendant received official notice of the EEOC charge in July 2008. (Notice of Charge of Discrimination, ECF No. 105-15). It is unclear from the record whether Defendant received actual notice of the EEOC charge prior to this date.

On March 31, 2008, Plaintiff was informed that his request for promotion from Assistant Professor to Associate Professor was denied. (March 31, 2008 Letter from Provost Al Hasan I. Musah to Dr. Paul Abney, ECF No. 105-19). Defendant asserts that the denial of promotion was based on Plaintiff's failure to meet its five-year teaching requirement as well as his failure to receive two ratings of excellent in the Teaching Performance and Effectiveness and Professional Competence and Achievement categories of his faculty evaluations. (*Id.*). Plaintiff asserts that

he met these requirements,² and claims that the denial of promotion was in retaliation for his filing a charge of discrimination with the EEOC. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 28, ECF No. 113). Plaintiff also alleges that the denial of promotion was based in part on the retaliatory evaluation made by Dr. Jackson, which remained in his personnel file. (*Id.* at ¶¶ 27, 31).

On October 1, 2008, Plaintiff received a Notice of Right to Sue from the EEOC. (Am. Compl. ¶ 43, ECF No. 22). Plaintiff initiated legal proceedings against Defendant on December 29, 2008, alleging violations of Title VII of the Civil Rights Act of 1964, violations of certain Virgin Islands discrimination laws, breach of the duty of good faith and fair dealing, breach of contract, intentional infliction of emotional distress, and negligent infliction of emotional distress. (Compl., ECF No. 1). However, he continued his employment with Defendant. Then, in March 2009, Plaintiff sought to apply for tenure, but was told that the University was not reviewing tenure applications that year and that he was ineligible due to the number of years he had taught at the University. (March 31, 2009 Email from Dr. Eustace Esdaille to Dr. Paul Abney, ECF No. 105-32; March 25, 2009 Email from John Munro to Dr. Paul Abney, ECF No. 105-31).

One month later, on April 23, 2009, Plaintiff wrote to his Academic Dean to apply for a one-year leave of absence from the University due to "some unavoidable responsibilities concerning the health and welfare of my 90-year-old mother." (Apr. 23, 2009 Email from Dr. Paul Abney to Dean of Education Joane McKay, ECF No. 105-30). The Dean agreed that she would write a letter of recommendation to Provost Musah about Plaintiff's plans. (*Id.*). The

---

² The disagreement as to whether Plaintiff met Defendant's five-year teaching requirement is based on the fact that Plaintiff served as the Chair of the Division of Education for one year, and the question of whether he also accrued credit for teaching that year.

5

parties dispute whether this was the proper procedure for applying for a leave of absence, and also whether Plaintiff lied about his reasons for taking the leave. Regardless of these disputes, Plaintiff allegedly believed that the request for leave had been granted. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 18, ECF No. 113).

On May 1, 2009, Plaintiff left the University, but did not go to help his mother; rather, he left to take a position at Ross University in Dominica as an Associate Professor. (Pl.'s Nov. 10, 2011 Dep. 5-7, 27, ECF No. 105-13). Plaintiff started at Ross University with an annual salary of $98,000, which was $44,938 more than he was earning in his position with Defendant. (*Id.*). Although Plaintiff started teaching at Ross University on May 1, 2009, Plaintiff's 2008-2009 contract with Defendant ran through May 20, 2009. (Contract for Academic Year 2008-2009, ECF No. 105-20; Pl.'s Nov. 10, 2011 Dep. 25, ECF No. 105-13). Plaintiff had also signed a contract with Defendant to teach during the 2009-2010 school year. (Contract for Academic Year 2009-2010, ECF No. 87-2). Consequently, Defendant claims that Plaintiff abandoned his position by leaving before the end of the 2008-2009 term. (Def.'s Statement of Undisputed Material Facts ¶ 20, ECF No. 86).

Plaintiff did not return to the University in the fall, even though the University claimed that his request for leave had not been approved. (Sept. 18, 2009 Letter from Provost A. I. Musah to Dr. Paul Abney, ECF No. 87-2). On September 18, 2009, the Provost threatened to terminate Plaintiff if he did not return to the University to teach in the Spring 2010 semester. (*Id.*). Plaintiff responded on December 1, 2009, requesting leave for the Spring 2010 semester on the basis of the alleged discrimination and retaliation he suffered. (Dec. 1, 2009 Letter from Dr. Paul Abney to Provost A. I. Musah, ECF No. 105-34). The Provost denied Plaintiff's leave request and advised him that Plaintiff would be recommended for termination due to his

6

abandonment of his position. (Jan. 21, 2010 Letter from Provost A. I. Musah to Dr. Paul Abney, ECF No. 87-2).

As noted above, Plaintiff filed this lawsuit in federal court in December 2008. (ECF No. 1). Plaintiff filed an amended complaint on December 2, 2009. (ECF No. 22). The parties engaged in discovery. Then, on August 10, 2012, Defendant filed a motion for summary judgment. (ECF No. 87). This motion is presently before the Court.

## DISCUSSION

### A. Legal Standard

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." *Id.* When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

The non-movant's burden is heavy: it "must point to concrete evidence in the record;" mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. *Orsatte v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (citations omitted).

B. Analysis

Defendant moves for summary judgment on Counts I, III, IV, V, and VI of the amended complaint.[3] The Court will address these Counts in the order presented by Defendant.

*1. Count I - Title VII*

Defendant initially argues that Plaintiff's Title VII claim is time-barred. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice" to discriminate against any individual on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). An individual wishing to challenge an employment practice under this provision in federal court must first file a charge with the EEOC. *Id.* § 2000e–5(e)(1); *Webb v. City of Philadelphia*, 562 F.3d 256, 262 (3d Cir. 2009). If the party also initiates a complaint with a parallel state agency, as Plaintiff did, the charge must be filed within 300 days of the occurrence of the alleged unlawful employment practice for the practice to be actionable. 42 U.S.C. § 2000e–5(e)(1); *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001).

Defendant attests that Plaintiff's EEOC charge was filed on July 14, 2008, and that all of the relevant events identified in the charge occurred more than 300 days before that date. (Def.'s Br. 8, ECF No. 87). However, Plaintiff alleges that the charge was filed on March 18, 2008.

---

[3] Defendant does not move for summary judgment on Count II, violation of the discrimination laws of the Virgin Islands.

(Pl.'s Br. 16, ECF No. 112). Neither party provides evidence as to the date the charge was filed beyond their own depositions and affidavits, except for the charge itself and EEOC's official notice of the charge to Defendant, which do not contain proof of the date the charge was filed. (*See* Def.'s Statement of Undisputed Material Facts ¶ 3, ECF No. 86; Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts ¶ 3, ECF No. 113). On a motion for summary judgment, the Court must resolve all inferences against the moving party. Given that neither side has established the date the charge was filed, the Court will resolve this question against the moving party, in this case, Defendant. Therefore, for purposes of this motion, the Court will use Plaintiff's alleged filing date of March 18, 2008.

The 300th day prior to March 18, 2008 is May 23, 2007. The Court agrees that some of the events reported in the EEOC charge, such as the cancellation of Plaintiff's independent study course, occurred before May 23, 2007. (*See* Affidavit of Paul Abney ¶ 9, ECF No. 87-1; August 29, 2006 Email from Dr. Jackson to Dr. Paul Abney, ECF No. 106-15). However, other reported events occurred on or after that date, including the filing of the faculty's vote of no confidence and Dr. Jackson's allegedly retaliatory evaluations. (Affidavit of Paul Abney ¶¶ 16-20, ECF No. 87-1). Given that Defendant has not shown that all of the events in the EEOC charge occurred more than 300 days before the alleged filing of the charge, the Court will deny summary judgment on this basis.

Defendant further argues that the Court should enter summary judgment on the Title VII claim because some of the events detailed in the amended complaint were not included in Plaintiff's EEOC charge. While a plaintiff must file a charge with the EEOC before filing a Title VII claim in federal court, "the parameters of a civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge

9

of discrimination, including new acts which occurred during the pendency of proceedings before the Commission." *Anjelino v. New York Times Co.*, 200 F.3d 73, 94 (3d Cir. 1999). Moreover, "[w]here discriminatory actions continue after the filing of an EEOC complaint . . . the purposes of the statutory scheme are not furthered by requiring the victim to file additional EEOC complaints." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984).

Some of the alleged discriminatory events described in Plaintiff's amended complaint were not included in Plaintiff's EEOC charge. These include Defendant's denial of Plaintiff's request for leave, his denial of promotion and ability to apply for tenure, and his termination from the University, which all occurred after the original EEOC charge was filed. However, because these actions follow from the alleged discrimination described in the charge, a reasonable jury could find that they were within the scope of the EEOC investigation which could reasonably have been expected to grow out of the charge of discrimination. *Anderson*, 477 U.S. at 248. Moreover, because they represent a continuation of the allegedly discriminatory actions described in the charge, a reasonable jury could also find that the purposes of the statute would not be served by requiring Plaintiff to have filed additional EEOC complaints. Therefore, the Court will deny summary judgment on this basis.[4]

Next, Defendant argues that the Court should enter summary judgment on this Count because Plaintiff fails to rebut the proffered legitimate non-discriminatory reasons for Defendant's refusal to promote Plaintiff. Courts analyze Title VII claims under the *McDonnell Douglas* burden-shifting framework. Under the *McDonnell Douglas* framework, Plaintiff bears

---

[4] Defendant also suggests that the Court should enter summary judgment because Plaintiff invoked internal grievance mechanisms in lieu of filing timely claims with the EEOC. However, Defendant does not cite any authority for the proposition that a party who invokes internal grievance mechanisms may not thereafter file a Title VII claim in federal court. Therefore, the Court will not address this argument further.

10

the initial burden of establishing a prima facie case of a Title VII violation. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case of "reverse discrimination," as Plaintiff pleads in this case, he must "present[ ] sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff less favorably than others because of [his] race." *Iadimarco v. Runyon*, 190 F.3d 151, 163 (3d Cir. 1999). And to establish a prima facie case of "retaliation," Plaintiff must show that (1) he engaged in activity protected by Title VII; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Davis v. City of Newark*, 285 F. App'x 899, 904 (3d Cir. 2008).

If Plaintiff succeeds in establishing a prima facie case for either claim, the burden then shifts to Defendant to "articulate some legitimate, nondiscriminatory reason" for its actions. *See Iadimarco*, 1909 F.3d at 163. Plaintiff then has an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by Defendant was a pretext for unlawful discrimination. *See Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 410 (3d Cir. 1999).

Plaintiff attempts to establish a prima facie case of reverse discrimination and retaliation based on Defendant's reassignment of Plaintiff's responsibilities, denial of his request for leave, denial of promotion and ability to apply for tenure, and his termination from the University. (Am. Compl. ¶ 55, ECF No. 22). Plaintiff alleges that he was treated less favorably from his colleagues due to his race, and that Defendant retaliated against him for engaging in the protected activities of filing grievances and a complaint with the EEOC. (*Id.*; *see also* Pl.'s Br. 4-7, 22, ECF No. 112). Given these allegations, a reasonable jury could find that Plaintiff established a prima facie case of reverse discrimination and retaliation.

Under the *McDonnell Douglas* burden shifting framework, the burden then shifts to Defendant to articulate a legitimate non-discriminatory reason for its actions. Defendant can satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)). This second prong does not require Defendant to prove "that it was actually motivated by the proffered reasons. It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Defendant argues that its decisions were made for legitimate non-discriminatory reasons, including a desire to reform Plaintiff's department, Plaintiff's failure to meet the standards for promotion or tenure, and his failure to apply for leave through the proper channels. (Def.'s Br. 11, ECF No. 87). As evidence, Defendant points to the requirements for promotion and tenure outlined in the Faculty Policy Manual, as well as depositions from Dr. Jackson and President Ragster detailing the issues of the Education Division. (*Id.* at 5, 11). Given this evidence, a reasonable jury could conclude that there were nondiscriminatory reasons for Defendant's unfavorable employment decisions.

Therefore, the burden shifts back to Plaintiff to show that Defendant's reasons were pretextual. To satisfy this burden, Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (citing *Hicks*, 509 U.S. at 511). Plaintiff argues that Defendant's proffered reasons were

12

pretextual because the purported standards enunciated by Defendant did not conform to the policies established in the Faculty Policy Manual. (Pl.'s Br. 22, ECF No. 112).

The Court cannot say that there is no genuine issue of material fact, such that Defendant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Having read the pertinent sections of the Faculty Policy Manual, the Court agrees that Plaintiff presents a genuine issue of material fact as to what the manual requires, and whether he and Defendant followed those procedures in relation to the denial of Plaintiff's promotion, ability to apply for tenure, and request for leave. A reasonable jury could find that Defendant's purported reasons for its adverse employment actions were pretextual. Therefore, the Court will deny summary judgment on this basis.

Finally, in supplemental briefing, Defendant argues that the Court should enter summary judgment on the grounds that Dr. Jackson was not a supervisor, and Plaintiff cannot show adequate causation for retaliation in the 2006-2007 faculty evaluation. Defendant cites the U.S. Supreme Court's recent decisions in *Vance v. Ball State University*, 133 S. Ct. 2434 (2013), and *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013). (Def.'s Supplemental Br., ECF No. 117). However, the most significant claims described in the amended complaint are not based merely on Dr. Jackson's actions or the 2006-2007 faculty evaluation. Rather, they derive from Defendant's alleged refusal to disregard Dr. Jackson's evaluation and its actions after Dr. Jackson was reassigned. These claims involve Defendant's denial of Plaintiff's promotion, ability to apply for tenure, and request for leave, as well as his termination. Given the centrality of these incidents to Plaintiff's amended complaint, *Vance* and *Nassar* are inapposite, and summary judgment will not be entered on this basis.

### 2. *Counts III and V – Breach of the Duty of Good Faith and Fair Dealing and Breach of Contract*

Defendant moves for summary judgment on Plaintiff's breach of contract claim on the grounds that Plaintiff has not shown any breach of his contract with Defendant, and Plaintiff has suffered no damages. In the Virgin Islands, a claim for breach of contract has four elements: "(1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Bank of Nova Scotia v. Ross*, No. 10-118, 2012 WL 4854776, at *4 (D.V.I. Oct. 12, 2012).

The Court will first address the issue of damages. Defendant argues that Plaintiff did not suffer loss of income given that his salary rose from $53,062 to $94,000, an increase of $40,938,[5] when he began teaching at Ross University, and then again rose to $113,000 soon after. (Def.'s Br. 16, ECF No. 87). Plaintiff acknowledges that he received a raise when he started teaching at Ross University, but nonetheless alleges that he suffered "loss of income, loss of professional stature due to a failure to be tenured, loss of job security from denial of a tenure process, loss of tenured employment in the United States (country of origin), relocation expenses, mental anguish, medical expenses, pain and suffering, and loss of enjoyment of life" due to discrimination by Defendant. (Pl.'s Br. 25, ECF No. 112) (citing Pl.'s Counter-Statement of Additional Facts ¶ 24, ECF No. 105). However, Plaintiff does not identify "concrete evidence in the record" supporting these allegations. *Orsatte*, 71 F.3d at 484. Because Plaintiff's allegations of damages are wholly speculative, and Defendant showed that Plaintiff did not suffer loss of income, the Court agrees that there is no genuine issue of material of fact as to whether Plaintiff

---

[5] Plaintiff notes that his initial salary at Ross University was in fact $98,000, not $94,000. (Pl.'s Nov. 10, 2011 Dep. 5-7, 27, ECF No. 105-13). Therefore, his salary rose $44,938, not $40,938.

14

suffered damages. Because damages are a required element of a breach of contract claim, Defendant is entitled to judgment as a matter of law on this claim.

Next, Defendant argues that it is entitled to summary judgment for Plaintiff's breach of the duty of good faith and fair dealing on the same grounds, that Plaintiff suffered no damages. (Def.'s Br. 16, ECF No. 87). Courts in the Virgin Islands have found that "[w]here a duty of good faith arises, it arises under the law of contracts." *Mendez v. Coastal Sys. Dev., Inc.*, No. 05-0165, 2008 WL 2149373, at *3 (D.V.I. May 20, 2008) (citing *Jo-Ann's Launder Center*, 854 F. Supp. 387, 390 (D.Vi. 1994); *Northview Motors, Inc. v. Chrysler Motors Corporation*, 227 F.3d 78, 91 (3d Cir. 2000)). Because the breach of good faith and fair dealing claim is derived from the alleged breach of contract, and the breach of contract claim fails because of Plaintiff's failure to allege damages, the claim for the breach of good faith and fair dealing must also fail. *See Cioni v. Globe Specialty Metals, Inc.*, 618 F. App'x 42, 45 (3d Cir. 2015); *Michael S. Rulle Family Dynasty Trust v. AGL Life Assur. Co.*, 459 F. App'x 79, 81 (3d Cir. 2011); *see also, e.g., Shahriary v. Teledesic LLC*, 60 F. App'x 157, 162 (9th Cir. 2003); *Int'l Bus. Machines Corp. v. Dale*, No. 11-951, 2011 WL 4012399, at *4 (S.D.N.Y. Sept. 9, 2011); *Cavcon, Inc. v. Endress ± Hauser, Inc.*, 557 F. Supp. 2d 706, 729 (S.D.W. Va. 2008); *Williams v. Astra USA, Inc.*, 68 F. Supp. 2d 29, 38 (D. Mass. 1999). Therefore, the Court will enter summary judgment on this count in favor of Defendant.

### 3. *Count IV – Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress*

Defendant argues that Plaintiff is barred from asserting claims for intentional infliction of emotional distress or negligent infliction of emotional distress under the economic loss doctrine. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec.*

15

*Corp.,* 66 F.3d 604, 618 (3d Cir. 1995); *see also Werwinski v. Ford Motor Co.,* 286 F.3d 661, 671 (3d Cir. 2002); 74 Am. Jur. 2d Torts § 24. Virgin Islands courts apply the doctrine "when appropriate," considering the facts of each case on a case-by-case basis. *Turnbull v. Univ. of the Virgin Islands,* No. 07-239, 2016 WL 1047893, at *5 (V.I. Super. Ct. Mar. 2, 2016).

In this case, Plaintiff is suing for breach of contract as well as tort claims for economic losses based on the alleged breach of that contract. In his claim for intentional infliction of emotional distress and negligent infliction of emotional distress, Plaintiff asserts no additional facts and made no additional legal arguments. Plaintiff does not assert that Defendant owed him any additional duties outside those enunciated in his employment contracts. For these reasons, Plaintiff's tort claims flow solely from his contracts with Defendant, and thus are barred by the economic loss doctrine. Therefore, the Court will enter summary judgment on this count in favor of Defendant.

### 4. *Count VI – Punitive Damages*

Finally, Defendant moves for summary judgment on Plaintiff's claim for punitive damages, for the reason that Defendant is a government instrumentality that is immune from punitive damages. Virgin Islands courts have extended immunity from punitive damages to a variety of government entities, including the Virgin Islands Water and Power Authority, the Port Authority, the Housing Authority, and recently, Defendant, on grounds of public policy. *See Turnbull v. Univ. of the Virgin Islands,* No. 07-239, 2016 WL 1047893, at *6 (V.I. Super. Ct. Mar. 2, 2016); *Concepcion v. V.I. Housing Authority,* 47 V.I. 112 (V.I. Super. Ct. 2005); *Powell v. V.I. Water and Power Authority,* 20 V.I. 579 (D.V.I. 1984); *Codrington v. V.I. Port Authority,* 33 V.I. 245 (D.V.I. 1996). The courts have found that punitive damages would be inappropriate in these circumstances given that these damages are designed to punish rather than compensate,

and said punishment would fall on the public, which would ultimately pay the costs through higher taxes and fees. *See Turnbull*, No. 07-239, at *6; *Concepcion*, 47 V.I. at 116-17.

The Court sees no significant difference between the other governmental instrumentalities that have been found immune and Defendant. Plaintiff attempts to distinguish the Virgin Islands Housing Authority on the basis of its severely limited ability to raise revenues. (Pl.'s Br. 29-30, ECF No. 112 (citing *Concepcion*, 47 V.I. at 122)). However, the Court finds that this distinction is not the crux of the Superior Court's opinion in *Concepcion*; rather, it is the public policy rationale described above. *Concepcion*, 47 V.I. at 118-19. Given Plaintiff's failure to distinguish Defendant from the other governmental entities, and the Superior Court's prior finding of immunity, the Court agrees that Defendant is immune from punitive damages. Therefore, the Court will enter summary judgment with regard to Plaintiff's claim for punitive damages in favor of Defendant.

## CONCLUSION

For the reasons described above, Defendant's motion for summary judgment will be granted in part and denied in part. Summary judgment will be entered for Defendant on Counts III, IV, V, and VI. Summary judgment will be denied on Count I. A corresponding order follows.

Anne E. Thompson, U.S.D.J.

Date: May 3, 2016